UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRESTMARK, a division of METABANK, NATIONAL ASSOCIATION.<br><br>　　　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>TELEESCROW, INC.<br><br>　　　　　　　　　　Defendant. | Civil Action No.:<br><br>**COMPLAINT** |

Plaintiff CRESTMARK, a division of METABANK, NATIONAL ASSOCIATION ("Crestmark"), through its undersigned counsel, for its Complaint against Defendant TELEESCROW, INC. ("Teleescrow") alleges as follows:

## NATURE OF THE ACTION

1. In this action, Crestmark seeks, *inter alia*, to enforce the express terms of that certain Payment Services Agreement, dated September 16, 2021 (the "Teleescrow Agreement") between Crestmark and Teleescrow, pursuant to which Crestmark is entitled to the recovery of escrowed funds totaling approximately $5,018,781.41[1] (the "Crestmark Account Funds"), which Teleescrow is wrongfully withholding in breach of the Agreement. A true and correct copy of the Agreement is annexed hereto as **Exhibit A**.

2. Crestmark brings this Complaint for: (1) an injunction, enjoining Teleescrow from accessing, or otherwise moving or dissipating, the Crestmark Account Funds; and (2) damages and

---

[1] This amount reflects the monies contained in Crestmark's Acct. No. 175306588 held by Teleescrow, as of January 14, 2022. This amount does not reflect additional Silver Birch Systems LLC accounts receivable, which have accrued and become due and owing to Crestmark, and that are not presently posted in the account.

redress for Teleescrow's breach of the Agreement, and wrongful possession of the Crestmark Account Funds.

## PARTIES

3. Crestmark is a national bank domiciled in, and a citizen of the State of South Dakota, pursuant to 12 U.S.C. § 1464(x), with its main office located in Sioux Falls, South Dakota.

4. Teleescrow is a payment processor domiciled in, and a citizen of the State of New York. Teleescrow is incorporated under the laws of the State of New York, and upon information and belief, has its principal place of business in New York, New York.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over Crestmark's state law claims pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Teleescrow and venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Teleescrow resides within the State of New York and a substantial part of the events giving rise to the claims herein occurred in the Southern District of New York.

7. The Teleescrow Agreement includes a provision stating that jurisdiction and venue are proper in the State of New York and this Court.

## FACTUAL ALLEGATIONS

8. Crestmark is a bank that provides business-to-business financing, as well as other financial solutions and services.

9. Teleescrow is a payment processor that coordinates the transmittal of money between businesses, including lenders and borrowers.

10. On September 13, 2021, Crestmark entered into that certain Loan and Security Agreement with Silver Birch Systems LLC ("Silver Birch") whereby Crestmark extended Silver Birch a line of credit loan up to $10,000,000.00 (the "Loan").

11. The Loan is evidenced by that certain Promissory Note, executed by Silver Birch, in favor Crestmark, dated September 13, 2021.

12. Additionally, Daniel T. Oshatz, individually, independently, and unconditionally guaranteed all obligations and liabilities due and owing under the Loan Documents, by executing a Personal Guaranty, dated September 13, 2021.

13. The Note, Loan and Security Agreement, and all other documents evidencing or securing the Loan are referred to herein as, the "Loan Documents."

14. Pursuant to the Loan Documents, Silver Birch agreed to set up a "Lockbox Account," whereby Silver Birch would remit all accounts receivable to the "Lockbox Account" from which Crestmark would receive payments on the Loan (the "Loan Payments").

15. Pursuant to the Loan and Security Agreement, in September 2021, Silver Birch effectuated a lockbox arrangement with Teleescrow (the "Lockbox Arrangement"). *See* Teleescrow Letter, dated September 21, 2021, a true and correct copy of which is annexed hereto as **Exhibit B**.

16. That same month, Crestmark and Teleescrow entered into the Agreement, whereby Teleescrow agreed to process the money going into and out of the "Lockbox Account."

17. Beginning in October 2021, in order to make the monthly Loan Payments, Silver Birch directed its accounts receivable to the "Lockbox Account." The funds held in the "Lockbox Account" constitute the Crestmark Account Funds held in Account 175306588.

18. During the months of October and November 2021, Crestmark timely received Loan Payments drawn from the "Lockbox Account" held by Teleescrow.

19. However, without notice by Teleescrow or Silver Birch, during the month of December 2021, Teleescrow completely stopped transmitting the Loan Payments from the "Lockbox Account" to Crestmark.

20. Pursuant to the Agreement, Crestmark may withdraw the Crestmark Account Funds "at any time". *See* Agreement § 5.1. Crestmark made several demands to Teleescrow to release the Crestmark Account Funds.

21. By letter dated December 27, 2021, Teleescrow acknowledged its breach of the Agreement (the "December 27th Letter"). *See* December 27th Letter, a true and correct copy of which is annexed hereto as **Exhibit C**.

22. In the December 27th Letter, Teleescrow apologized for the delay in transmittal of the Loan Payments and stated that the delay in releasing the Crestmark Account Funds was due to two, separate and "coincidental," outages at two major banks in which Teleescrow held the Crestmark Account Funds. *See* **Exhibit C.**

23. Further, Teleescrow promised to send proof of the outages and to remit payment of the outstanding Crestmark Account Funds to Crestmark. *See* **Exhibit C.** To date, Teleescrow has done neither.

24. On December 30, 2021, Teleescrow sent an email to Crestmark stating that all system issues had resolved. *See* Teleescrow Email, dated December 30, 2021, a true and correct copy of which is annexed hereto as **Exhibit D.**

25. On January 6, 2022, Crestmark sent a follow-up letter to Teleescrow, again requesting disbursement of the Crestmark Account Funds pursuant to the Agreement (the "January

6 Letter"). *See* January 6 Letter, a true and correct copy of which is annexed hereto as **Exhibit E.** Teleescrow neither responded to the January 6 Letter, nor disbursed any of the Crestmark Account Funds as demanded and required under the Agreement.

26. On January 11, 2022, Crestmark's counsel sent a letter to Teleescrow seeking, *inter alia*, resolution of Teleescrow's failure to remit the Crestmark Account Funds (the "BCLP Letter"). *See* BCLP Letter, dated January 11, 2022, a true and correct copy of which is annexed hereto as **Exhibit F.**

27. On January 12, 2022, Teleescrow responded to the BCLP Letter stating that the Crestmark Account Funds were "safe and unincumbered[sic]," and "bank procedures, techcnical[sic] issues, AML and other procedures" were causing the delay. *See* Teleescrow Email, dated January 12, 2022, a true and correct copy of which is annexed hereto as **Exhibit G**.

28. Teleescrow neither disputed the amount of the Crestmark Account Funds, nor challenged Crestmark's right to the Crestmark Account Funds. *See* **Exhibit G.**

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

29. Crestmark re-alleges and incorporates by reference the allegations set forth above in paragraphs 1-28.

30. The Agreement is a valid and enforceable contract between Crestmark and Teleescrow.

31. Crestmark has fully performed its obligations under the Agreement.

32. Teleescrow has breached the Agreement by failing to disburse the Crestmark Account Funds due and owing to Crestmark upon demand. *See* Agreement § 5.1.

33. As a result of Teleescrow's breach of the Agreement, Crestmark has been damaged in an amount no less than $5,018,781.41, plus accruing fees, expenses and other charges.

## SECOND CLAIM FOR RELIEF
### (Conversion)

34. Crestmark re-alleges and incorporates by reference the allegations set forth above in paragraphs 1-33.

35. Crestmark has a possessory right and interest in the Crestmark Account Funds.

36. Crestmark is the rightful owner of the Crestmark Account Funds.

37. Crestmark has made numerous demands for remittal of the Crestmark Account Funds from Teleescrow.

38. Teleescrow has failed and refused to comply with Crestmark's demands.

39. Teleescrow's interference with the Crestmark Account Funds is in derogation of Crestmark's rights to the Crestmark Account Funds, pursuant to the express terms of the Agreement.

40. As a result of Teleescrow's conversion of the Crestmark Account Funds, Crestmark has been damaged in an amount no less than $5,018,781.41, plus accruing fees, expenses and other charges.

## PRAYER FOR RELIEF

Based on the foregoing, Crestmark respectfully requests the following relief from this Court:

  i. Injunctive relief, including but not limited to, an order enjoining Teleescrow from accessing, or otherwise moving, interfering or dissipating, the Crestmark Account Funds;

  ii. An award of all actual, compensatory, consequential, incidental and/or special damages, estimated to be no less than $5,018,781.41, plus accruing fees, expenses and other charges incurred as a result of Teleescrow's breach of the Agreement and conversion of the Crestmark Account Funds;

  iii. An award of all costs, expenses, and attorney's fees incurred by Crestmark in readying, bringing, and prosecuting this action against Teleescrow; and

iv. Such other and further relief as this Court may deem just and proper.

## NO JURY TRIAL DEMANDED

| | |
|---|---|
| Dated: January 14, 2022<br>New York, New York | **BRYAN CAVE LEIGHTON PAISNER LLP**<br><br>By: _/s/ Christine B. Cesare_<br>Christine B. Cesare, Esq.<br>CC-1967<br>1290 Avenue of the Americas, Floor 33<br>New York, New York 10104<br>T: 212-541-2000<br>E: cbcesare@bryancave.com<br>*Attorneys for Plaintiff* |